UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KYNTREL TREVYONE JACKSON,<br><br>   Plaintiff,<br><br>   v.<br><br>HEIDI L.ROMERO, et al.,<br><br>   Defendant. | CASE NO. 3:19-CV-5756-RBL-DWC<br><br>ORDER |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. 46) and Motion to Stay Discovery ("Motion to Stay," Dkt. 48).

The Court finds Plaintiff has failed to state a claim upon which relief can be granted in the Amended Complaint (hereinafter "Complaint"). Therefore, the Court grants the Motion to Dismiss (Dkt. 46), but gives Plaintiff leave to file an amended complaint. The Court defers ruling on the issue of qualified immunity. Plaintiff must file an amended complaint on or before

February 13, 2020. The Court also grants the Motion to Stay (Dkt. 48) and all discovery is stayed until the Court enters an order lifting the stay.

**I.     Background**

Plaintiff Kyntrel Trevyone Jackson was housed at Clallam Bay Corrections Center ("CBCC") between February 2019 and June 2019 and then transferred to Washington Corrections Center ("WCC") on June 12, 2019. Dkt. 10. Plaintiff alleges Defendants violated Plaintiff's constitutional rights under the First and Fourteenth Amendments and several state and federal criminal statutes. Dkt. 10. Specifically, Plaintiff alleges Defendants retaliated against Plaintiff for filing "legal bankruptcy" actions against Defendant Romero, and Defendants denied Plaintiff due process when he was transferred from CBCC to WCC and placed in isolation. *Id.* at 11.

Defendants filed their Motion to Dismiss on November 22, 2019. Dkt. 46. Plaintiff filed a Response, Defendants filed a Reply, and Plaintiff filed a Surreply. Dkt. 49, 52, 53. Defendants also filed a Motion to Stay Discovery on November 25, 2019. Dkt. 48. Plaintiff filed a Response and Defendants filed a reply. Dkt. 50, 51. As Plaintiff is proceeding *pro se* and Defendants did not object to the Surreply, the Court also considered Plaintiff's Surreply in ruling on the Motions.

**II.    Plaintiff's Allegations**

In February 2019, Plaintiff alleges he was transferred to the Intensive Management Unit ("IMU") at CBCC for his protection. Dkt. 10 at 11, 57, 58; Dkt. 49 at 14. While housed in IMU, in April 2019, Plaintiff alleges he began taking "legal bankruptcy" actions against CBCC psychology associate, Defendant Heidi Romero, by sending her several letters, affidavits, and notices. Dkt. 10 at 11.

In the letters, Plaintiff attempts to assert bankruptcy against Defendant Romero and states he is billing Defendant Romero for the damages she caused. Dkt. 10 at 11, 20. On April 28, 2019, Plaintiff sent a letter alleging Defendant Romero owes Plaintiff $765,000 in damages. Dkt. 10 at 11, 21. Plaintiff's letter states Defendant Romero has thirty days to pay the debt in full, or Plaintiff will enter an affidavit of foreclosure, and Plaintiff will be forced to file an involuntary bankruptcy petition against Defendant Romero. Dkt. 10 at 11, 21.

Plaintiff sent another letter on May 27, 2019, reiterating Defendant Romero's debt to Plaintiff and stating Defendant Romero must provide Plaintiff with all her personal property before he files foreclosure and a lien against her. Dkt. 10 at 11, 29. On May 28, 2019, Plaintiff sent an invoice to Defendant Romero, now stating she had incurred a debt of over $1 million. Dkt. 10 at 11, 35-38. On June 9, 2019, Plaintiff sent a third letter stating Defendant Romero is in foreclosure and Plaintiff was forcing her into involuntary bankruptcy because she refused to pay her debt. Dkt. 10 at 11, 32.

On June 6, 2019, Plaintiff alleges a meeting was held by Defendants Irving, Brady, Bannan, Romero, Gillespie, Dittman, Long, and Carr wherein they decided Plaintiff's actions were a threat to the security of CBCC IMU, and Plaintiff was fixated on and harassing a CBCC staff member. Dkt. 10 at 11, 57-58. Plaintiff was transferred to WCC on June 12, 2019. Dkt. 10 at 12, 58. Plaintiff was placed in isolation at WCC. Dkt. 10 at 11, 58.

### III. Standard of Review

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

Where, as here, exhibits are attached to a complaint, the exhibits are deemed part of the complaint for all purposes, including for purposes of determining the sufficiency of the plaintiff's claims. *See* Fed.R.Civ.P. 10(c); 5A Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1327, at 443-44 (2002). Moreover, if an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the complaint. *Wilson v. Fitter*, 2009

WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009) *report and recommendation adopted,* 2010 WL 3893992 (C.D. Cal. Sept. 30, 2010) (citing *Riggins v. Walter,* 279 F.3d 422, 425-26 (7th Cir. 1995) (affirming dismissal of prisoner's § 1983 claims where information in attached exhibit contradicted allegation of complaint); *Hudson v. Phillipson,* 2008 WL 356884, *3 (W.D.Mich. Feb.7, 2008) (dismissing prisoner's § 1983 claims where information in attached exhibits conflicted with allegations of complaint)).

### IV. First Amendment Retaliation

Plaintiff alleges Defendants retaliated against him because he filed bankruptcy proceedings against Defendant Romero. Dkt. 10.

To prevail on a retaliation claim, a plaintiff must allege and prove the defendants retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Filing a grievance is protected action under the First Amendment. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is also protected under the First Amendment. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir. 1985).

First, Plaintiff has not alleged that he was engaged in conduct that was protected under the First Amendment. He has only alleged he sent Defendant Romero letters asserting legal bankruptcy but does not allege facts demonstrating why these letters should be considered protected conduct under the First Amendment.[1] Notably, Plaintiff may not initiate an involuntary bankruptcy proceeding without a petition to the court, and his letters do not constitute legal action. Plaintiff has failed to allege any facts demonstrating he had a legal right or authority to demand money from Defendant Romero. Plaintiff fails to provide any authority for his contention that filing letters alleging improper bankruptcy actions and debt collection is protected conduct such as the filing of a grievance or a civil rights action. *See Valandingham,* 866 F.2d at 1138; *Rizzo,* 778 F.2d at 532. Accordingly, Plaintiff has failed to allege sufficient facts to satisfy this third prong.

With respect to the fifth element, Plaintiff has failed to allege Defendants' actions transferring him to WCC did not reasonably advance a legitimate correctional goal. Legitimate penological interests include, "the preservation of internal order and discipline" as well as "the maintenance of institutional security." *Procunier v. Martinez,* 416 U.S. 396, 412 (1974), *limited by Thornburgh v. Abbott,* 490 U.S. 401 (1989). Given Plaintiff's threat to force Defendant Romero into involuntary bankruptcy and foreclose on her personal property, along with Defendants' findings that Plaintiff had become fixated on and was harassing Defendant Romero, whose duties required regular attendance and presence in the unit where Plaintiff was housed,

---

[1] Plaintiff is advised that involuntary bankruptcy is a legal proceeding, in which a creditor must petition the court to initiate the proceedings against a debtor. *See* 11 U.S.C. §§ 101–1532. "Section 303 requires that creditors filing a petition for involuntary bankruptcy against a debtor have claims that are not subject to a bona fide dispute." *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1064 (9th Cir. 2002). Based on the allegations in the Complaint, Plaintiff has not set forth any facts demonstrating he meets the requirements as a petitioning creditor or that Defendant Romero owes any debt or has any legal obligation to pay Plaintiff any sum of money.

Plaintiff has failed to allege facts demonstrating his transfer to WCC did not reasonably further legitimate penological goals. When an action furthers legitimate penological goals it is not retaliation. *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994) (*per curiam* ) (citing *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir. 1985)).

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted.

**V.  Due Process**

Plaintiff also alleges Defendants violated his due process rights when Plaintiff was not provided with an opportunity to be heard prior to his transfer to WCC.[2] Dkt. 10. Plaintiff also alleges after his transfer to WCC he was placed on hold in isolation for 38 days and he has been deprived of his personal property. Dkt. 10 at 14, 16.

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v Conner*, 515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

*1.  Transfer*

Plaintiff alleges he was not afforded with an opportunity to be heard prior to his transfer to WCC. Dkt. 10. However, prisoners have no liberty interest in their classification status or in

---

[2] Plaintiff also alleges his Sixth Amendment right to a fair hearing was violated. Dkt. 10 at 10. However, Plaintiff's claims appear to arise under the Fourteenth Amendment due process clause, as Plaintiff is not currently facing a criminal prosecution. Therefore, the Court will construe these allegations as due process claims.

their eligibility for rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985); *see also Hewitt v. Helms*, 459 U.S. 460, 467 n. 4 (1983) (a liberty interest does not arise even when administrative segregation imposes "severe hardships," such as "denial of access to vocational, educational, recreational, and rehabilitative programs …"). Accordingly, Plaintiff has failed to allege facts showing his due process rights have been violated based on his transfer from CBCC to WCC.[3]

In his Response, Plaintiff states he is "not specifically complaining about due process over the transfer," but is alleging he was "denied any form of notice to dispute the false claims the defendants documented in his record that he was fixated, threatening, and harassing a staff member." Dkt. 49 at 5. Plaintiff fails to state a cognizable claim based on the allegedly false report. Because prisoners do not have a constitutional right to be free from false accusations of misconduct, the falsification of a disciplinary report, standing alone, does not state a § 1983 claim. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (no constitutional claims based on falsity of disciplinary charges); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly

---

[3] The Court also notes Plaintiff has named several employees of the Washington State Attorney General's Office as Defendants in this matter – Defendants Carr, Dittman, Lang, Willoughby, Gauthier, and McKinney. Dkt. 10. Plaintiff alleges these Defendants participated in the decision to transfer Plaintiff to WCC.[3] Dkt. 10 at 12. Plaintiff's Complaint contains only vague, conclusory statements regarding the conduct of Defendants Carr, Dittman, Lang, Willoughby, Gauthier, and McKinney with respect to Plaintiff's transfer. Moreover, the evidence submitted with the Complaint reflects that Defendants Carr, Dittman, Lang, Willoughby, Gauthier, and McKinney were not involved in the decision to transfer Plaintiff to WCC, but rather, this decision was made by Defendants Thrasher, Bowen, Feist, Kaech, Pfaff, Fletcher, Smith, Deshev, Uglick, McCollum, Newman, and Scott and non-party Neva. Dkt. 10 at 58.

accused of conduct which may result in the deprivation of a protected liberty interest."); *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) (allegations of a false or fabricated disciplinary charge against an inmate fail to state a claim under § 1983); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports); *Harvey v. Burris,* 2015 WL 81878572, *3 (N.D. Cal. Dec. 8, 2015) (allegations that defendants filed false disciplinary report did not give rise to § 1983 claim). While Plaintiff can state a constitutional claim arising from a false disciplinary report if the report was filed in retaliation for his exercise of constitutional rights, as discussed above in Section IV, Plaintiff has also failed to allege a claim of retaliation.

    *2. Placement in Isolation*

Plaintiff also alleges he has been housed in isolation at WCC for 38 days. Dkt. 10 at 14. Ordinarily, administrative segregation or isolation in and of itself does not implicate a protected liberty interest. *See Sandin*, 515 U.S. at 485-86. However, the ultimate inquiry is whether the confinement imposes an atypical and significant hardship. *See id.* at 483-84; *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003).

Plaintiff does not allege facts showing how his placement in administrative segregation imposes an atypical and significant hardship. *See* Dkt. 10. Plaintiff alleges he must complete a program before he can be released from isolation and alleges he is only allowed 50 pages of paper a month, denied a typewriter, denied the ability to be present for legal copies/scans, and denied legal work, but does not allege facts showing how these alleged restrictions violate his due process rights and how they impose an atypical and significant hardship compared to the

conditions in general population.[4] Dkt. 10 at 11. In addition, the attachments to his Complaint demonstrate his placement in maximum security at WCC is reviewed monthly. Dkt. 10 at 58. Therefore, Plaintiff has not alleged prison officials failed to periodically review his status in isolation. *Id. See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. 472 (determining due process requires prison officials to conduct an informal review of the evidence justifying the decision to segregate a prisoner, and must periodically review the initial placement).

Accordingly, Plaintiff has failed to allege facts showing his due process rights have been violated by his placement in isolation.

### 3. *Deprivation of Personal Belongings*

Plaintiff alleges he is being denied access to his personal property, including his legal work, while in isolation.[5] Dkt. 10 at 15.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974). However, only an authorized, intentional deprivation of property is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available under state law. *Id.* at 534. The

---

[4] To the extent Plaintiff alleges he does not have access to his legal work, the Court will also address the allegation below. *See* Section V.3.

[5] The Court notes Plaintiff does not appear to allege a separate access to courts claim, and Defendants' Motion to Dismiss does not seek dismissal of Plaintiff's Complaint on this basis. Dkts. 10, 46. Therefore, the Court will not analyze such a claim at this time. However, Plaintiff is advised a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 cases).

State of Washington provides a meaningful post-deprivation remedy for the intentional or negligent loss of property by state agents and employees by allowing for a suit in Superior Court once a person has completed the state's tort claim process. *Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (1986). To the extent Plaintiff is alleging he is being deprived of his personal property based on an unauthorized action, Washington State provides a post-deprivation remedy for the alleged action and thus, Plaintiff has not alleged a viable claim for relief. If Plaintiff is alleging the basis for the deprivation is authorized, authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78, 89 (1987).

Here, Plaintiff has failed to allege facts which identify the property that he was denied access to and whether the alleged deprivation was authorized or unauthorized. Without more, Plaintiff has failed to allege facts showing his due process rights have been violated by through the deprivation of his personal property.

**VI.    Witness Tampering and Conspiracy Claims**

Plaintiff alleges Defendants engaged in witness tampering and conspiracy pursuant to two criminal statutes, 18 U.S.C. §§ 241 and 242, and state law. Dkt. 10 at 10. "[T]he decision to file criminal charges is solely within the authority of prosecutors[.]" *Johnson v. U.S.*, 2014 WL 2621359, *5 (N.D. Cal. June 12, 2014); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wash. App. 201, 213-14 (2013) ("the power to prosecute criminal acts is vested in public prosecutors"). As the decision to prosecute Defendants is solely within the purview of the state prosecutor's office, Plaintiff has failed to state a claim for which relief can be granted as to this claim. Accordingly, the Court

recommends the Motion to Dismiss be granted as to Plaintiff's witness tampering and criminal conspiracy claims.

To the extent Plaintiff alleges any civil conspiracy claims, "[t]o state a claim for a conspiracy to violate one's constitutional rights ..., the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam). Claims based on vague and conclusory allegations, which fail to specify each defendant's role in the alleged conspiracy, are subject to dismissal. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Plaintiff provides only vague, conclusory statements alleging Defendants conspired to violate Plaintiff's "federal rights." Dkt. 10 at 14. He does not explain each Defendant's alleged role in the conspiracy. Accordingly, the Court finds Plaintiff has also failed to state a civil conspiracy claim.[6]

**VII. Leave to Amend**

The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). The Court finds Plaintiff has failed to allege facts sufficient to show Defendants are liable under § 1983. However, Plaintiff was not notified of the specific deficiencies in his Complaint and has not been given an opportunity to amend his Complaint with such notice. At this time, the Court cannot conclude Plaintiff is unable to overcome the deficiencies of the Complaint if he is given

---

[6] Defendants' Motion to Dismiss does not seek dismissal of Plaintiff's Complaint on this basis. *See* Dkt. 46. Nevertheless, the Court finds in the interests of justice, Plaintiff be notified of the deficiency of this claim and leave to amend.

an opportunity to amend. Accordingly, the Court grants the Motions to Dismiss, but gives Plaintiff leave to amend to attempt to cure the deficiencies of his Complaint.[7]

## VIII. Qualified Immunity

Because Plaintiff is granted leave to amend, the Court defers ruling on the issue of qualified immunity and will deny the Motion to Dismiss (Dkt. 46) on such grounds without prejudice. Although Defendants are not entitled to qualified immunity at this stage, the qualified immunity defense may be raised at a later time.

## IX. Instructions to Plaintiff

The Court orders Plaintiff to file an amended complaint on or before February X, 2020. Plaintiff shall present the amended complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it should contain the same case number, and it may not incorporate any part of the original Complaint by reference. The amended complaint will act as a complete substitute for the Complaint, and not as a supplement. The Court will screen the amended complaint to determine whether it contains factual allegations linking each defendant to the alleged violations of Plaintiff's rights.

Any new claims raised in the amended complaint must relate to the allegations contained in the Complaint. "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also

---

[7] The dismissal of claims with leave to amend is a non-dispositive matter. *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Therefore, in the interest of judicial efficiency and because the Court is granting leave to amend, the Court enters an order granting the Motions to Dismiss, not a Report and Recommendation. *See Hopkins v. Washington State Special Commitment Center Chief Medical Director*, 2016 WL 3364933 (W.D. Wash. June 17, 2016) (finding dismissal with leave to amend is non-dispositive and considering objections under Federal Rule of Civil Procedure 72(a)).

to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U .S.C. § 1915(g)). Thus, Plaintiff may not change the nature of his suit by adding new, unrelated claims in his amended complaint. *Id*. (no "buckshot" complaints).

Failure to file an amended complaint on or before February 13, 2020 will result in the Court recommending dismissal of this lawsuit.

### X. Motion to Stay (Dkt. 48)

Defendants request that discovery in the matter be stayed pending resolution of the Motion to Dismiss (Dkt. 46) and the issue of qualified immunity. Dkt. 48. Plaintiff filed a response to the Motion to Stay, stating he wishes to add additional requests while discovery is on hold. Dkt. 50. Plaintiff appears to concede discovery should be stayed but asks the Court to consider two issues he foresees once discovery resumes. Dkt. 50.

The court has broad discretionary powers to control discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Upon showing of good cause, the court may deny or limit discovery. Fed.R.Civ.P. 26(c). The parties should not be burdened with the expense of discovery until Plaintiff has filed a pleading stating claims under §1983, Defendants have filed an answer to those claims, and the Court has entered an Order lifing the stay. At that time, when the issues have been properly joined, the parties may more efficiently and effectively engage in the discovery process. Defendants' Motion to Stay is granted (Dkt. 48) and all discovery is stayed until the Court enters an order lifting the stay.

### XI. Conclusion

The Court finds Plaintiff has failed to sufficiently state a claim against Defendants under the First and Fourteenth Amendments. Therefore, Defendants' Motion to Dismiss (Dkt. 46) is granted. However, the Court finds Plaintiff may be able to cure the deficiencies of his Complaint and, thus, Plaintiff is given leave to amend the Complaint. The Court defers ruling on the issue of qualified immunity. The amended complaint must be filed on or before February 13, 2020. Defendants' Motion to Stay (Dkt. 48) is granted and all discovery is stayed until the the Court enters an order lifting the stay.

The Clerk is directed to provide Plaintiff the appropriate forms for filing a 42 U.S.C. § 1983 civil rights complaint. The Clerk is further directed to provide a copy of this Order to Plaintiff.

Dated this 13th day of January, 2020.

David W. Christel
United States Magistrate Judge