UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYNTREL TREVYONE JACKSON,

    Plaintiff,

v.

HEIDI L. ROMERO, et al.,

    Defendant.

CASE NO. 3:19-CV-5756-BJR-DWC

REPORT AND RECOMMENDATION

Noting Date: April 28, 2021

    The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 61.

### BACKGROUND

    In February 2019, Plaintiff Kyntrel Trevyone Jackson (Jackson) was transferred to the Intensive Management Unit at Clallam Bay Corrections Center (CBCC) for assaulting a fellow inmate. Dkt. 59 at 12, 58, 59. Two months later, Jackson was angered by an interaction he had with Heidi Romero (Romero), a Psychology Associate working for the Department of

Corrections (DOC). Dkt. 59 at 22-23. Jackson sent to Romero (via certified mail) a "Billing for Damages Notice," along with an "Affidavit of Billing" and two declarations from his fellow inmates. Dkt. 59 at 12, 22-29. In these documents, Jackson warned Romero that if she did not pay him $765,000 within thirty days he would issue an affidavit of default, then an affidavit of foreclosure. Dkt. 59 at 22-24, 29. If she still refused to pay him, Jackson told Romero he would "file an involuntary bankruptcy petition" against her. Dkt. 59 at 29. He "advised" Romero that her failure to either pay or negotiate with him would constitute her waiver of immunity and agreement to adjudication in bankruptcy court. Dkt. 59 at 23-24.

When Romero did not pay, Jackson sent her a "Notice of Default Invoice." Dkt. 59 at 31. In this Notice, Jackson told Romero that, according to state law, if she refused to provide him with the fair market value of her personal property before he filed for foreclosure and established a lien against her, he would assign a value as he saw fit. Dkt. 59 at 31. He also claimed "priority over all other existing possessory liens against" Romero's property. Dkt. 59 at 31. Jackson included an "Affidavit of Default" with his Notice and, again, sent the documents via certified mail. Dkt. 59 at 32-33.

Around the same time, Jackson sent a new "Notice of Billing Invoice" and "Affidavit of Billings" to Romero. Dkt. 59 at 37-39. This time, Jackson claimed Romero told prison investigators to "pull out witnesses" and intimidate and threaten them. Dkt. 59 at 37. He demanded an additional $1,001,525 in damages. Dkt. 59 at 39. Jackson again gave Romero thirty days to pay or suffer consequences. Dkt. 59 at 39.

About two weeks later, Jackson sent Romero a "Notice of Foreclosure," in which he told her he was forcing her "into involuntary bankruptcy because [she had] refused to pay" her debt to him. Dkt. 59 at 34. Jackson told Romero he was going to file "a U.C.C.-1 Lien" against her

REPORT AND RECOMMENDATION - 2

"with the WA Department of Licensing to collect property" and would also notify "the Clallam county auditor, recorder, [and] treasurer" of her refusal to pay the "debt owed." Dkt. 59 at 34. Jackson included an "Affidavit of Foreclosure" with his Notice and, again, both documents were sent via certified mail. Dkt. 59 at 35, 36.

Jackson's ongoing harassment of Romero led DOC officials to conclude he had become fixated on her. Dkt. 59 at 15, 58-59. Because Jackson had a history of fixating on a staff member and then acting out violently against him/her, Department officials decided to transfer Jackson to another facility to separate him from Romero. Dkt. 59 at 15, 59. On June 12, 2019, Jackson was transferred from Clallam Bay to Stafford Creek Corrections Center via Washington Corrections Center, where he was placed in isolation. Dkt. 59 at 15.

## PROCEDURAL HISTORY

On August 14, 2019, Jackson, initiated this civil rights case pursuant to 42 U.S.C. § 1983, proceeding pro se and in forma pauperis. Dkt. 1. On August 30, 2019, he filed an Amended Complaint. Dkt. 8. This Court declined to serve Jackson's Amended Complaint because it failed to demonstrate how each of the named Defendants allegedly harmed him. The Court gave Jackson leave to cure his deficiencies by filing another Amended Complaint. Dkt. 9. On September 5, 2019, Jackson filed another Amended Complaint, which the Court directed the Clerk to serve on Defendants. Dkt. 10, 11.

On November 22, 2019, Defendants filed a Motion to Dismiss. Dkt. 46. Jackson filed a response, Defendants filed a reply, and Jackson filed a surreply. Dkt. 49, 52, 53. Defendants also filed a Motion to Stay Discovery on November 25, 2019. Dkt. 48. Jackson filed a response and Defendants filed a reply. Dkt. 50, 51. On January 13, 2020, this Court granted Defendants' Motion to Dismiss, but permitted Jackson another opportunity to cure his deficiencies,

explaining to Jackson that his involuntary bankruptcy proceeding was not protected conduct. Dkt. 54. In the meantime, the Court stayed discovery. *Id*.

After the Court granted Jackson additional time, on August 31, 2020, he filed a Third Amended Complaint. Dkt. 59. Defendants then filed a Motion to Dismiss on September 14, 2020. Dkt. 61. On January 6, 2021, Jackson responded in opposition, and on January 8, 2021, Defendants replied. Dkt. 71, 72.

Meanwhile, on October 28, 2020, Jackson filed a Motion for a Preliminary Injunction and appointment of counsel. Dkt. 65. On November 16, 2020, Defendants responded in opposition to injunctive relief. Dkt. 66. On November 20, 2020, this Court recommended denying Jackson's motion, and on January 28, 2021, Judge Barbara Rothstein adopted that recommendation. Dkt. 70, 74.

## STANDARD

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a Complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

Where, as here, exhibits are attached to a Complaint, the exhibits are deemed part of the Complaint for all purposes, including for purposes of determining the sufficiency of the plaintiff's claims. *See* Fed. R. Civ. P. 10(c); 5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1327, at 443-44 (2002). Moreover, if an exhibit attached to a Complaint contradicts an assertion in the Complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the Complaint. *Wilson v. Fitter*, 2009 WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009) report and recommendation adopted, 2010 WL 3893992 (C.D. Cal. Sept. 30, 2010) (citing *Riggins v. Walter*, 279 F.3d 422, 425-26 (7th Cir. 1995) (affirming dismissal of prisoner's § 1983 claims where information in attached exhibit

contradicted allegation of complaint); *Hudson v. Phillipson*, 2008 WL 356884, *3 (W.D. Mich. Feb.7, 2008) (dismissing prisoner's § 1983 claims where information in attached exhibits conflicted with allegations of complaint)).

## DISCUSSION

Jackson's Third Amended Complaint (Dkt. 59) is virtually identical to his Second Amended Complaint (Dkt. 10), which this Court previously dismissed (Dkt. 54). In the present iteration, Jackson removes the argument section but otherwise restates his previous claims that Defendants violated his constitutional rights under the First and Fourteenth Amendments, as well as several state and federal criminal statutes, by retaliating against him for engaging in "protected conduct." Dkts. 59, 71. The retaliation allegedly consisted of moving him to a different prison facility and the protected conduct allegedly consisted of Jackson filing "legal bankruptcy" actions against Defendant Romero. Dkt. 59 at 11.

Since this Court has already thoroughly explained why Jackson's actions are not protected conduct, and that he does not have a right to be placed in any particular facility, there is no need to do so again. For the reasons the Court already explained in its order Denying Defendants' Second Motion to Dismiss but granting Jackson leave to amend (Dkt. 54), the Court hereby recommends Defendants' Third Motion to Dismiss be granted, this time with prejudice and without leave to amend.

In their Proposed Order (Dkt. 61-1) Defendants ask this Court to issue Jackson a "strike" under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915, though they do not address the issue in their pleadings. The PLRA limits an inmate's future ability to file an action in forma pauperis, stating:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on [three] or more prior

occasions . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

28 U.S.C. § 1915(g). Dismissal for failure to state a claim counts as a strike whether the dismissal was with or without prejudice. *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020)); *see also Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). This is most certainly the situation here, where Jackson was permitted multiple opportunities to state a claim for relief but failed to do so. Therefore, this Court finds that this case should be considered a "strike" against him within the meaning of the PLRA.

## CONCLUSION

The Court finds Plaintiff has failed to state a claim upon which relief can be granted, and therefore recommends granting Defendants' Motion to Dismiss (Dkt. 61), with prejudice. The Court also recommends this action count as a strike for purposes of 28 U.S.C. § 1915(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 28, 2021, as noted in the caption.

Dated this 14th day of April, 2021.

David W. Christel
United States Magistrate Judge